UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EMC PROPERTY AND CASUALTY COMPANY,<br><br>　　Plaintiff,<br><br>v.<br><br>205 CUSTOMZ, LLC, et al.,<br><br>　　Defendants. | }<br>}<br>}<br>}<br>}   Case No.: 2:15-cv-00293-RDP<br>}<br>}<br>}<br>}<br>} |

## MEMORANDUM OPINION

Before the court is Defendants' Motion to Stay (Doc. 9), filed April 20, 2015. The Motion has been fully briefed. (Docs. 11, 12). For the reasons outlined below, the Motion (Doc. 9) is due to be granted.

### I.   Background

This case involves whether Plaintiff EMC Property and Casualty Company's insurance policy covers a fire loss that occurred on August 23, 2014. (Doc. 11, at 1). On February 18, 2015, Plaintiff filed this civil action seeking a declaration disclaiming liabilities under its policy with Defendants 205 Customz, LLC and Ihab Barakat (the sole owner of 205 Customz). (Doc. 1, at ¶¶ 2-4). Plaintiff contends that Barakat intentionally set fire to an insured structure, and thereafter attempted to fraudulently collect on the underlying insurance policy. (Doc. 1, at ¶¶ 21-30). During Plaintiff's investigation, Barakat agreed to sit for an extensive examination under oath on November 13, 2014. (*See* Doc. 11-1). Defendants have lodged counterclaims against Plaintiff for breach of contract and bad faith. (Doc. 5, at ¶¶ 3-14).

In March 2015, Barakat was arrested for his alleged involvement in the intentional setting of the fire at issue in this case. (Doc. 11, at ¶ 2). Barakat was charged with second degree arson and first degree insurance fraud in the criminal case currently pending before the District Court for Jefferson County, Alabama. (*See id.*). Defendants' current Motion (Doc. 9) seeks a stay in this civil case while the criminal arson and insurance charges are pending against Barakat.

## II.      Discussion

Barakat asserts his Fifth Amendment right against self-incrimination as a basis for staying this civil proceeding pending the outcome of his criminal proceedings. This court may exercise its discretion to stay this case in the interest of justice.

There is no question that this court has the power to stay a civil proceeding due to an active, parallel criminal investigation. *See SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). As the Supreme Court has noted, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But, to prevail on a motion to stay, the movant must satisfy a high burden. *Id.* at 255; *U.S. v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (citations omitted). In determining whether to stay a civil case, the court may consider a variety of factors, including: the extent to which the issues in the criminal and civil cases overlap, the extent to which the defendant's Fifth Amendment rights are implicated, the interest of the plaintiff in proceeding expeditiously with the litigation and the potential prejudice to the plaintiffs from delay, the burden any particular aspect of the proceedings may impose on the defendant, the efficient use of judicial resources, the interests of persons not parties to the civil litigation, and the interest of the public in the pending civil and criminal litigation, and the relative statuses of the cases. *See Healthsouth*, 261

F. Supp. 2d at 1326.  "A balancing of these factors must be done on a case-by-case basis with the goal being to avoid prejudice." *Id.* (citing *Volmar Distributors, Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).  In making its determination to stay this action, the court addresses each of the relevant factors, in turn.

### A. Significant Overlap Is Unavoidable

Although no factor is necessarily dispositive, "[t]he degree to which the issues in the simultaneous civil and criminal proceedings overlap is the most important threshold issue in deciding whether the court should stay the civil proceeding." *Id.* (citing *Walsh Securities*, 7 F. Supp. 2d at 527).  In this case, the court concludes that there is plainly a significant overlap between the criminal case involving Barakat's alleged arson and insurance fraud, and the Plaintiff's similar allegations of arson (*i.e.*, exclusion for intentional acts) and insurance fraud in this civil case.[1]  The substance of the civil and criminal claims revolve around a common nucleus of disputed fact: did Barakat intentionally set fire to the insured property and did he lie about it afterward.  The unavoidable conclusion is that resolution of that dispute will go a long way in deciding the outcome of both cases, and pursuing this issue in force with two judicial bodies would be an inefficient use of both private and public resources.

### B. Plaintiff's Fifth Amendment Rights Are Likely Waived

Plaintiff argues that Defendants are not entitled to the Fifth Amendment's privilege against self-incrimination in this case because Barakat has waived his privilege by sitting for an

---

[1] Similarly, Defendants' counterclaims assert the related causes of action of: breach of contract and bad faith. (Doc. 5, at ¶¶ 3-14).

3

examination under oath. For the reasons outlined below, the court assumes without deciding that Barakat has waived the privilege against self-incrimination.[2]

The court recognizes that a testimonial waiver of Fifth Amendment rights is "not lightly to be inferred." *Smith v. United States*, 337 U.S. 137, 150 (1949); *see also Emspak v. United States*, 349 U.S. 190, 197 (1955). The Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). It protects the witness against compulsion to make any disclosure which he "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Id.* However, "[t]he amendment 'does not preclude a witness from testifying *voluntarily* in matters which may incriminate him.'" *United States v. Mock*, No. 2:12-cr-104-MHT, 2013 WL 1984370, at *1 (M.D. Ala. May 13, 2013) (emphasis added) (quoting *United States v. Monia*, 317 U.S. 424, 427 (1943)). In *Mock*, the district court held:

> Once a person voluntarily testifies (whether in a civil trial, a deposition, or *another proceeding*), any Fifth Amendment right he may have otherwise had with respect to the testimony he gave is waived. *See United States v. White*, 846 F.2d 678, 690 (11th Cir. 1998) ("A witness who testifies at *any proceeding*, instead of asserting his Fifth Amendment rights, loses the privilege.").

*Id.* at *1 (emphasis added). Here, by submitting sworn testimony at an examination under oath, Barakat has testified at "another proceeding" or "any proceeding," and thus, appears to have waived his Fifth Amendment privilege against self-incrimination.

Defendants argue that because Barakat was contractually required to testify at an examination under oath, the examination under oath should not be deemed a voluntary waiver of

---

[2] Defendant 205 Customz cannot invoke Fifth Amendment rights. The protection provided by the Fifth Amendment can only be invoked by a natural person. *Braswell v. United States*, 487 U.S. 99 (1988). Because 205 Customz is not a natural person, it cannot, in and of itself, invoke Fifth Amendment privilege. Any Fifth Amendment consideration derives from Barakat's constitutional rights.

his Fifth Amendment privilege.  Defendants are correct that a witness cannot exercise his Fifth Amendment privilege to avoid a *contractual* obligation to sit for an examination under oath.  *See Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944, 947 (11th Cir. 1990) ("[It] is clear that the plaintiff's refusal to submit to the requested examination under oath constitutes a breach of the insurance contract . . . . [The] fifth amendment privilege against self-incrimination does not in this case excuse [the plaintiff] from fulfilling his contractual obligation.")).  However, the practical inability to assert Fifth Amendment privilege to avoid an examination under oath does not make a witness's waiver any less voluntary.  A witness, like Barakat, certainly faces a tradeoff, but this freedom to choose is at the heart of the Fifth Amendment's protection.  *See Pervis*, 901 F.2d at 947 ("The fifth amendment preserves the right to choose, and the voluntariness of the choice is always affected in some way by the exigencies of a particular situation. . . . [D]efendant cannot be free from conflicting concerns, and in any case, defendant must weigh the relative advantages of silence and explanation." (quoting *White*, 589 F.2d at 1287)).

If a witness wants to preserve his Fifth Amendment privilege against self-incrimination, the witness may choose to decline to testify at an examination under oath.  Of course, this failure to testify may have consequences on a witness's insurance claim,[3] but this contingency is not relevant to the testimonial waiver analysis.  "The Supreme Court has emphasized that '[t]he sole concern of the Fifth Amendment . . . is governmental coercion.'" *United States v. White*, 846 F.2d 678, 688-89 (11th Cir. 1988) (quoting *Colorado v. Connelly*, 479 U.S. 157 (1986)).  Contrary to Defendants assertions, it is clear that Barakat has not been impermissibly "compelled" to waive his Fifth Amendment privilege by submitting to an examination under

---

[3] Almost all insurance contracts require an examination under oath as a condition precedent to coverage. Therefore failing to testify may be tantamount to releasing your claim to coverage.

oath.[4]   Therefore, for the purposes of this motion, the court assumes without deciding that Barakat has waived his Fifth Amendment privilege.

## B.   Interests of Plaintiff

The court appreciates Plaintiff's interest in moving forward with this matter. However, the court does not believe that any resulting delay will unfairly prejudice Plaintiff. Plaintiff argues that delay will permit Barakat to attempt to spend or hide assets that could otherwise be used pay Plaintiff's potential judgment in this action. However, in large part, Plaintiff seeks declaratory judgment to avoid paying on Defendants' claim, and, to the best of the court's knowledge, Plaintiff has not yet paid on Defendants' claim. In addition, by allowing the criminal prosecution of Barakat to precede the litigation of its civil claims, Plaintiff may actually reduce its own litigation expenses in pursuing this civil action. The resolution of the criminal matter may dispose of some, if not all of, the civil claims in this case.

Admittedly, the likelihood of witnesses becoming unavailable or being unable to recall specific facts certainly increases with the passage of time, as does the potential loss of documents and physical evidence. However, the court is not putting this case on the shelf to grow cold. Instead, the court is permitting the stay in this case so that Barakat's criminal prosecution may be pursued in force for the very conduct that underlies this action. Again, an exhaustive criminal investigation into Barakat's conduct may actually be beneficial to Plaintiff in the subsequent prosecution of its civil case. Furthermore, Plaintiff has in its possession Barakat's (admittedly thorough) examination under oath. (*See* Doc. 11, at 3-4). Similarly, Plaintiff admits that Barakat has also "provided various records and documents deemed relevant to the investigation of the

---

[4] In this case, there is a substantial argument that Barakat waived his Fifth Amendment privilege, in whole or in part, by voluntarily submitting to over five hours of sworn testimony. In sitting for his examination under oath, Plaintiff hoped his testimony would remove any questions about his involvement in the fire. But, having "played that card," Plaintiff cannot now seek to avoid the consequences of that testimony.

fire." (*Id.* at 4).  Regardless, any minor inconvenience that a brief delay in this case may cause is greatly outweighed by the potential waste of duplicative judicial resources and the possibility of inconsistent rulings that may occur if the civil case moves forward.

### C. A Stay of This Litigation will Reduce the Burden on Defendants

Staying this case will significantly reduce the burden on Defendants.  Barakat will not be required to fight a war on two fronts.  Instead, he will be able to focus on his criminal proceedings alone.  Furthermore, Defendants resources may be conserved to the extent that resolution of the first criminal proceeding reduces the expense of having to fully and redundantly litigate an overlapping civil case.[5]

### D. Judicial Resources Will Be Wasted by Pursuing Parallel Civil and Criminal Actions

As discussed throughout, judicial resources will be conserved by staying this civil action. In this civil case, Plaintiff has alleged that Barakat engaged in insurance fraud by intentionally setting fire to the insured property and then attempting to cover it up.  (Doc. 1, at ¶¶ 21-30).  In the criminal action, Barakat is charged with insurance fraud and arson.  Because the issues in the criminal and civil actions appear to overlap significantly, proceeding on parallel tracks will lead to needless redundancy.  (Doc. 11, at ¶ 2).  Staying this civil action may actually allow it to reach a more efficient, less expensive, and quicker resolution.  In fact, a stay in favor of allowing the criminal case to take the lead may operate to cause this case to be more efficiently resolved because this procedure may eliminate the need for some discovery and narrow the scope of the civil case.

---

[5] Of course, the same can be said with respect to Plaintiff's resources.  Staying this case may be an effective procedure to preserve those as well.

### E.     The Nonparty Interest to the Civil Litigation Is Uncertain

Plaintiff identifies several persons who are not parties to this action who may have an interest in the resolution of this case.  The fire at issue here damaged a vehicle that belonged to an individual customer, several vehicles on the lot of Car Source, a business located next to the fire site, and the tools and tool boxes of several of Defendants' employees.  (Doc. 11, at 7-8 (citing Doc. 11, Ex. A, Barakat Examination Under Oath 85:13-86:17, 165:17)).  However, Plaintiff does not indicate how the resolution of the civil action will affect the interest of these parties.

It is unclear whether the policy at issue in this case included third party liability coverage, and whether any nonparty's recovery is contingent upon the resolution of this case.  Defendants argue, without explanation, that "the ongoing civil proceedings by [Plaintiffs] are not likely to restore said property to [the nonparties]."  (Doc. 12, at 8).  The court concludes that, without more information, nonparties' interests in this civil action are at best uncertain.  Moreover, on this record, whatever interests these nonparties may have do not outweigh the real interest of those who stand to accrue the significant costs of redundant litigation.

### F.     Interests of the Public in the Pending Civil and Criminal Litigation.

The court cannot discern any significant interest that the public may have in this civil proceeding that will not be fully addressed in the criminal case.  A stay in this civil matter does not in any way hinder the progress of the State's criminal case.  The vindication of the public interest is more likely to be achieved in a criminal, rather than a civil, proceeding.  And, in a criminal proceeding, the public interest is directly represented by the State.  Plaintiff argues that this civil case must move forward to protect the public safety, but only a criminal proceeding actually permits the removal of an arsonist from the streets.

Ultimately, the court finds that the significant overlap between this case and its criminal counterpart counsel in favor of conserving judicial resources and sparing the parties from potentially inconsistent rulings. Therefore, the court concludes that a stay is appropriate.

## III. CONCLUSION

For the forgoing reasons, Defendants' Motion for a Stay (Doc. 9) is due to be granted. A separate order consistent with this memorandum opinion will be entered in this case.

**DONE** and **ORDERED** this June 5, 2015.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE